FILED
2017 Oct-11 PM 01:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| CASSANDRA LEIGH WILLIAMSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 7:17-cv-01490-LSC |
| DONALD J. TRUMP, President of the United States, et al., | ) ) ) ) ) | |
| Defendants. | | |

## Memorandum of Opinion

The Court has received Plaintiff's Complaint as well as her response to the Court's Order to show why Plaintiff's claims should not be dismissed for failure to state a claim upon which relief may be granted and for lack of standing. For the reasons stated below, this action is due to be DISMISSED without PREJUDICE.

## I. Facts

Plaintiff is a transgender veteran living in Tuscaloosa, Alabama. She alleges that the Presidential Memorandum for the Secretary of Defense and Secretary of Homeland Security (the "memorandum"), dated August 25, 2017, violates her rights to equal protection of law under the Constitution.

Section 1(b) of the memorandum states President Donald J. Trump's intent to prohibit openly transgender individuals from accession into the United States military and authorizes the discharge of such individuals. Section 2(b) further directs the Secretary of Defense and the Secretary of Homeland Security to halt the use of Department of Defense or Department of Homeland Security resources to fund sex reassignment surgical procedures for military personnel. These sections are to take effect on March 23, 2018. The memorandum further instructs the Secretary of Defense, in consultation with the Secretary of Homeland Security, to submit a plan to President Trump for implementing the transgender-hiring prohibition by February 21, 2018.

## II. Plaintiff's Arguments

Plaintiff argues the memorandum violates the right to equal protection of the law of all transgender military personnel. As a transgender veteran, Plaintiff *does not* argue that she is part of the class of military personnel directly affected by the memorandum. Instead, she states that the memorandum has indirectly resulted in discrimination by third parties. Plaintiff's pleadings claim that the memorandum has "had an immediate chilling impact on the [P]laintiff's ability to get work" because it was "seen by the community and prospective potential employers of the Plaintiff as justification to not consider her for employment and to mistreat her

when she goes out to get food, go to church, and deal with other issues in the community, or even to walk her dog." (Doc. 4 at 2-3.) Nor does Plaintiff claim that President Trump or the memorandum directly command her mistreatment, but argues the symbolic weight attached to the President's actions encourages private "bias and bigotry toward Plaintiff," *id.* at 2, and that "[p]otential employers feel emboldened to not consider her [for a position]." *Id.* at 3. Plaintiff asks the Court for a nationwide injunction preventing President Trump from implementing the abovementioned sections of the memorandum.

### III. STANDARD OF REVIEW

The Court must "inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "[B]ecause the constitutional standing doctrine stems directly from Article III's 'case or controversy' requirement, this issue implicates . . . subject matter jurisdiction, and accordingly must be addressed as a threshold matter regardless of whether it is raised by the parties." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1271 (11th Cir. 2015) (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003)). "'Article III standing must be determined as of the time at which the plaintiff's complaint is filed,' and 'the standing inquiry requires careful judicial

examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.'" *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir.2011) (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) and *Allen v. Wright*, 468 U.S. 737, 752 (1984)). "[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Alabama*, 168 F.3d at 410. The party invoking federal jurisdiction bears the burden of proving the essential elements of standing, although "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Because Plaintiff's action is due to be dismissed for lack of subject matter jurisdiction, this Opinion does not reach whether the *pro se* Plaintiff has stated a claim or whether the action is frivolous under 28 U.S.C. § 1915(e)(2). *See* 28 U.S.C. § 1915(e)(2) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action is frivolous or malicious [or] . . . fails to state a claim on which relief may be granted.").

## IV. Discussion

The Court determines standing according to two differing strands of analysis: the constitutional requirements under Article III and prudential limitations on the exercise of otherwise constitutionally allowed claims. *Elend v. Basham*, 471 F.3d 1199, 1205-06 (11th Cir. 2006). To establish standing under Article III, a plaintiff must show (1) "an injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks and citations omitted). The injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). Also, the causal connection must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (internal quotation marks, citations, and alterations omitted); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury."). On the other hand, under prudential requirements, "a plaintiff cannot

raise the claims of third parties; cannot claim standing based on a generalized grievance; and must raise a claim within the zone of interest covered by a statutory conferral of standing." *Elend*, 471 F.3d at 1206 (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203–10 (11th Cir. 1991)).

Assuming "as true all material allegations contained in the complaint and constru[ing] the complaint in a light most favorable to the complaining party," *id.* at 1208, Plaintiff has not stated "general factual allegations of injury" that fulfill her burden at the pleading stage to show she has suffered a "concrete and particularized" injury in fact. *DiMaio*, 520 F.3d at 1301. The Eleventh Circuit has recognized that in the employment context "discrimination against a transgender individual because of her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender." *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011). While Plaintiff has stated that she has been discriminated against by employers because she is transgender, she does not say with any specificity who these employers are nor does she produce enough facts for the Court to analyze her generalized claims of employment discrimination. There is not enough information for the Court to determine whether any of Plaintiff's employers or potential employers caused her an injury-in-fact.

Regardless of whether Plaintiff can show an injury by employers, Plaintiff wholly fails to show how the Defendants' actions have caused her injury or how an injunction by this Court would remedy future injuries. Plaintiff's pleadings lack any evidence that the discrimination suffered was caused by the memorandum or by President Trump's tweets. Plaintiff's allegations are that employers, not the President, have caused an injury to Plaintiff through employment discrimination. Although the memorandum does order that the accession of transgender persons in the military eventually be ceased, it in no way directs the hiring practices of private individuals or companies. In this case, "[t]he line of causation between the [alleged] illegal conduct and injury" is simply "too attenuated." *Allen*, 468 U.S. at 752. Thus the Court cannot conclude that Plaintiff has shown her injury suffered was caused by any of the Defendants' actions.

To the extent that Plaintiff claims that President Trump's actions impacted the rights of *current* transgender military personnel, a class to which Plaintiff as a veteran does not belong, it fails because it raises the rights of third parties not before the Court. *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994) (general prohibition against third-party standing). Nor do Plaintiff's allegations fall into any of the recognized exceptions for third party standing.

**V. CONCLUSION**

Plaintiff does not have standing to sue any of the named Defendants. As such, this action is due to be DISMISSED without PREJUDICE. An Order consistent with this Memorandum of Opinion will be entered herewith.

**DONE** AND **ORDERED** ON OCTOBER 11, 2017.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
190485